JOSEPH MAZETTI *v.* THE NEW YORK AND HARLEM RAILROAD
COMPANY.

When a railroad company are duly authorized to lay their track in one of the
streets of the city, they are not, at all events and without proof of negligence
or want of skill and reasonable care, liable for accidents which may be caused
thereby. Proof of such negligence or want of care or skill in the manner of
constructing or maintaining the track, are necessary, as between them and per-
sons exercising the common right of passing and repassing through or across
the street.

Although the court may be of opinion that upon the evidence, as it appears on
paper, they should have found differently, they will not, where the evidence is
conflicting, set aside the report of a referee upon the facts, unless the evidence
against the finding so greatly preponderates, or his finding is so far without
evidence in its support, as to warrant the inference of bias, corruption, par-
tiality, or some bad faith or unfairness in the referee, or some mistake in law or
in its application to the case.

THE plaintiff sued the railroad company for injuries to a
horse within the city limits, caused by catching the hoof in
such manner, between the rails of the defendants' track, as to
lame and permanently injure him. The case came before the
court, on the defendants' appeal from a judgment entered
against them on the report of a referee. When the argument
of the appeal was first opened, the court ordered its suspension,
and, for the reasons appearing in the opinion, directed a fur-
ther report as to whether the referee found negligence on the
part of the defendants, and if so, in what the negligence con-
sisted. The cause was then heard upon the original and sup-
plemental reports.

*Charles W. Sandford,* for the defendants, cited, among other
authorities, *Burroughs* v. *Housatonic R. R.* 15 Conn. 124; *Bor-
dentown and S. A. Turnpike* v. *Camden and Amboy R. R. Co.*
2 Harrison, 314.

*Horton H. Burlock,* for the plaintiff, made the following
references, touching the laying of rails in streets, etc. : Laws of
1831, pp. 327, 328, §§ 11, 12, and 16 ; Laws of 1832, pp. 156, 157 ;
Laws of 1850, p. 224, § 28, sub. 5, and p. 235, § 49 ; *Milham* v.

*Sharp*, 15 Barb. 208, 221, and 222; *Hentz* v. *Long Island R. R. Co.* 13 ib. 656; *Plant* v. *Long Island R. R. Co.* 10 ib. 28, 29; *Chapman* v. *The Albany and Schenectady R. R. Co.* 10 ib. 360, 367; *Drake* v. *The Hudson River R. R. Co.* 7 ib. 548, 549, 550, 556; *Hamilton* v. *The New York and Harlem R. R. Co.* 9 Paige, 172; *Fletcher* v. *The Auburn and Syracuse R. R. Co.* 25 Wend. 462.

By the Court. Woodruff, J.—Numerous exceptions were taken by the defendants to the ruling of the referee upon the admissibility of evidence, and the correctness of some of those rulings appears to me not free from doubt. But the appellant's counsel did not urge his appeal upon any such ground, nor submit any point founded upon any alleged error of the referee in this respect. It is therefore unnecessary that we should consider those exceptions in examining the appeal.

The report of the referee, as first submitted to us, plainly proceeded upon the legal proposition that although the defendants had laid their rails under competent legal authority, and under the superintendence, direction, and consent of the corporation of this city, and although the rails were laid down without any negligence or want of skill in their construction, position, or condition at the time, the company are nevertheless liable to third persons, if the rails cause an injury to them while engaged in the lawful use of the street; or, in other words, the company could not lay down any rails, however skillfully and carefully, without a liability to pay for accidents occurring to those who used the street in the ordinary mode, the latter not being guilty of carelessness or negligence.

Our impressions, when the case was called for argument and opened, were, that this rule imposed upon the railroad company was too stringent, and not warranted by sound principle or the authorities, so far as the subject has been brought under judicial discussion.

The cases cited by the plaintiff's counsel (25 Wend. 462; 9 Paige, 172; 7 Barb. 548, etc.; 10 ib. 28; ib. 360; 13 ib. 656; and 15 ib. 208) do not appear to me to warrant the proposition contended for.

If the defendants had a lawful right to lay their track in the street, and I have no doubt they had, "provided (in the language of the chancellor, in *Hamilton* v. these defendants, 10 Paige, 172) it did not materially interrupt the ordinary use of the street through which it passed," then they were not liable at all events for the consequences of every accident which might occur by reason thereof. No doubt if there was any negligence or want of skill either in the manner of adjusting or laying the rails, or in maintaining the same, they were liable, but otherwise not. A pavement is laid in the street to promote the public convenience, and yet it may cause an accident which would not have happened if the street were not paved. A particular mode of paving may be selected which is, upon the whole, most conducive to the public convenience, and which may yet in an individual instance occasion an injury which would not have happened in the use of a pavement of a different kind.

· I apprehend that the common right of our citizens to use the streets is in all respects subject to the right of the public authorities to regulate and control it, and to permit new modes of use, as the exigencies of society and the better conduct of the business of the city may require ; and the idea that such alteration in the mode of use, or even an appropriation of a portion thereof to a specific mode of use, can only be made upon due compensation to those who may be prejudiced thereby, because it appropriates private property to the use of the public without compensation (if such a suggestion has any foundation), has no application to a case like the present. When that argument has been urged, it has been on behalf of owners of lots in the vicinity who claim that their property has been injured.

We were, therefore, not prepared to adopt the · holding of the referee as unqualified and absolute, that as between the defendants and this plaintiff " the streets cannot be obstructed by rails but at the risk of those who put them down on such streets," irrespective of the question whether they were well or ill constructed, and whether put down under the

sanction of legislative authority, and with the approbation of the city authorities, or not.

Under these circumstances, we ordered the case referred back to the referee for his finding upon the question of actual negligence on the part of the defendants, and that he report, if he finds such negligence, in what the negligence consists; and therefore he has reported, that he finds negligence on the part of the defendants in this, that " the rails were not so constructed and laid so closely together, and in such form as to prevent horses from getting their shoes in between the rails by the ordinary pressure of a horse; or the swelling after hard frost, between which flat rail and the main rail the injury to the plaintiff's horse occurred."

Although the other language of the supplemental report when read in connection with the report first submitted, may warrant a suspicion that his latter finding was mainly governed by the view of the relative rights of the parties above controverted; yet it is not so clearly so that we can interfere upon that suspicion; nor can we say that this finding is so plainly against the weight of the evidence that it should not be suffered to stand.

We have no doubt whatever of the duty of the company in regard to the construction and maintenance of their track, to exercise such care and skill as are reasonable, taking into view the place in which the track is laid; the common right of our citizens to pass and repass over the track; the necessity which, at the intersections of streets, especially, compels persons with horses and vehicles of all kinds, loaded and unloaded, to cross the track in the pursuit of their ordinary business. And it is equally clear that reasonable care and skill under such circumstances are of a much higher degree than would be imposed upon them under circumstances of a different character. Indeed what is ordinary care and skill is always to be determined by reference to the place and circumstances in which a party is acting.

Upon this question of negligence or care in constructing and maintaining the track, the evidence was conflicting. It was

claimed by the defendants that the two rails were laid as closely together as was possible; and some witnesses say they were in actual contact; and yet the fact is plainly shown that the shoe of the horse or some part of it pressed between them. Other witnesses say there was a considerable space between them—one says two inches—and that there was distance enough to admit a horse's foot or shoe to be caught therein. Another gives us to understand that when the inner rail was "pryed up," in order to release the horse's foot, it was done by inserting a "cart-rung" two inches in width and thickness between the two rails. There is much other evidence on the point, and if I were called upon to determine the weight of the evidence on this question of negligence, I might perhaps differ from the referee in his conclusion, but that alone would not warrant a setting aside of his report. We have held, repeatedly and uniformly, that, unless the preponderance of testimony against the finding of a referee is so great as to warrant the presumption of partiality or bad faith, or at least unfairness or mistake in the application of some rule of law, we cannot disturb the finding. Many reasons for this might be assigned. An obvious suggestion is, that having the witnesses before him in person, he has a better opportunity to determine the degree of credit to which their testimony is entitled than we can have. It was conceded on the argument that it was not necessary nor proper to place the rails so far separated from each other as to create any danger of catching the feet of horses passing over, and it was insisted that these rails were not so placed, but were in actual contact with each other. The evidence on the subject conflicts very materially, and I feel bound to regard the finding of the referee as conclusive.

The judgment should, therefore, I think, be affirmed.

Judgment affirmed.